191 So.2d 33 (1966)
STATE of Florida ex rel. Joel N. LEE, Appellant,
v.
T.A. BUCHANAN, As Sheriff of Dade County, Florida, Appellee.
No. 34336.
Supreme Court of Florida.
October 5, 1966.
Jepeway & Gassen and Joe N. Unger, Miami, for appellant.
Earl Faircloth, Atty. Gen., and William D. Roth, Asst. Atty. Gen., for appellee.
KANNER, District Judge (Ret.)
A writ of habeas corpus obtained by appellant was quashed by the circuit court, which held that section 72.40(2) (a), Florida *34 Statutes, F.S.A.,[1] under which appellant was informed against and arrested, was not so vague and indefinite as to render it violative of the state or federal constitutions. This is a direct appeal from the order of the court so finding.
A proceeding in habeas corpus is civil rather than criminal in nature, even though sought in behalf of one charged with or convicted of a crime. Crownover v. Shannon, Florida 1964, 170 So.2d 299; State ex rel. Deeb v. Fabisinski, 1933, 111 Fla. 454, 152 So. 207, 156 So. 261. The circuit court terminated the habeas corpus proceeding by passing directly upon the validity of the statute and remanding the appellant to custody. The order thus constituted a final adjudication, the appeal from which is properly lodged here. Article V, section 4(2), Florida Constitution, F.S.A.
The information against appellant, an attorney at law licensed to practice in Florida, alleged that he had unlawfully charged and received compensation or money other than that allowed by law in connection with placement of a child for adoption or an adoption proceeding. The lower court in its order framed the primary issue as being whether the provisions of the statute were "* * * so vague and indefinite as to render this section of the statute unconstitutional." It found the statute to be a constitutionally valid exercise of the police power of the legislature. The fact that a jury might be required to determine a question of reasonableness did not in the court's opinion render the statute too vague to afford a practical guide to permissible conduct. United States v. Ragen, 1942, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383, was cited for this premise.
This court, in Brock v. Hardie, 1934, 114 Fla. 670, 154 So. 690, presented guidelines for testing the constitutional validity of a Florida statute under a question of vagueness, considering at some length the case of Cline v. Frink Dairy Co., 1927, 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146. There, we said:
"* * * Whether the words of the Florida statute are sufficiently explicit to inform those who are subject to its provisions what conduct on their part will render them liable to its penalties is the test by which the statute must stand or fall, because, as was stated in the opinion above mentioned, [Cline v. Frink Dairy Co.] `a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.'
"Such seems to be the test approved by the Supreme Court of the United States. Citation of authorities as to what may be considered the exact meaning of the phrase `so vague that men of common intelligence must necessarily guess at its meaning,' so that certain conduct may be considered within or outside the true meaning of that phrase, or what language of a statute may lie within or without it, would be of little aid to us.
"We must apply our own knowledge with which observation and experience have supplied us in determining whether *35 words employed by the statute are reasonably clear or not in indicating the legislative purpose, so that a person who may be liable to the penalties of the act may know that he is within its provisions or not."
See also Locklin v. Pridgeon, 1947, 158 Fla. 737, 30 So.2d 102.
In Brock, we upheld the validity of certain sections of the Florida anti-trust statute, finding that it described the acts which it intended to punish with as much certainty as did the Colorado statute in Cline, but without the provisions which rendered the latter void. We are here asked to determine whether the words "reasonable charges or fees" in the contextual setting of the statute are sufficiently clear and explicit to meet the constitutional criterion of due process of law proscribing vagueness and uncertainty.
The Cline case concerned certain legislation known as the Colorado Anti-Trust Act, which was struck down for denial of due process, the court deciding that the legislature was not justified in holding the average person to a rule of conduct gauged by his judgment and action in respect to the statutory language requiring a "reasonable price" or a "reasonable profit," since no fixed standard of guilt existed. Citing the case of Connally v. General Construction Co., 1926, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, the court stated that its decisions upholding statutes as sufficiently certain generally had rested upon the conclusion that they employed words or phrases having a technical or special meaning well enough known to enable those within their reach to correctly apply them; or a well-settled common-law meaning, notwithstanding an element of degree in the definition as to which estimates might differ; or, broadly stated, that for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.
The court in the case of Connally v. General Construction Co., supra, had before it a penal statute that created a new offense. It indicated what is required in the consideration of such a statute, observing:
"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law."
There, the court held void an Oklahoma statute employing the measurement, "current rate of wages," which it disapproved as containing no ascertainable standard of guilt.
A provision of the Lever Act prohibiting the willful making of an "unjust or unreasonable rate or charge" in handling or dealing in or with any necessaries was considered in United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, cited by the court in Cline. It was deemed so clearly not an ascertainable standard of guilt as to need no elaboration. The court saw no reason to doubt the soundness of the observation of the court below to the effect that to "attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury."
A major case relied upon by the court below in sustaining the validity of the present statute is that of United States v. Ragen, supra. There, the Supreme Court of the United States upheld the constitutionality of a section of the Revenue Act of 1932. The defendants had been convicted for alleged tax evasion for their taking of deductions upon a corporate income tax for "commissions" in excess of the authorized "reasonable allowance" for necessary business expenses. By this guise, the nondeductible dividends were secretly distributed by the defendants to the stockholder employees. The charge against the defendants was laid *36 under section 145 of the Revenue Act providing that "`any person who willfully attempts in any manner to evade or defeat any tax imposed by this title [chapter] or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony * * *.'" (Emphasis supplied.) The court distinguished Cohen and certain other cases, adverting to the criteria which they employed, and held that no such "unworkable standards" existed in Ragen. It emphasized that the direction to deduct "`a reasonable allowance for salaries or other compensation for personal services actually rendered'" was of long standing. Concluding that "The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct," the court nevertheless did point out that thousands of corporations over the years had applied the standard there involved without general confusion. It referred to the intentional nature of the defendant's wrongful act and, stressing scienter, declared:
"On no construction can the statutory provisions here involved become a trap for those who act in good faith. A mind intent upon willful evasion is inconsistent with surprised innocence. * * * And the charge given by the trial court amply instructed the jury that scienter is an essential element of the offense." (Citations omitted.)
In some instances of obscure legislation, common-law guidelines, other legal precedents, and familiar practice have been considered. In this connection, the court in Cline, supra, reviewed its prior decision in Nash v. United States, 1913, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232, where it had affirmed the validity of the Sherman Anti-Trust law against claimed unconstitutionality. As to Nash, the court first noted that it had this case before it in its consideration of Cohen, previously mentioned in this opinion, and found nothing in it inconsistent with its Cohen ruling. It then had this to say of Nash:
"In the Nash Case we held that the common-law precedents as to what constituted an undue restraint of trade were quite specific enough to advise one engaged in interstate trade and commerce what he could and could not do under the statute. In commenting on and affirming the Nash case, this court said in International Harvester Co. [of America] v. [Commonwealth of] Kentucky, 234 U.S. 216, 223, 34 S.Ct. 853, 855, (58 L.Ed. 1284):
"`The conditions are as permanent as anything human, and a great body of precedents on the civil side, coupled with familiar practice, make it comparatively easy * * * to keep to what is safe.'"
Statutes criminal in character must be strictly construed. Reynolds v. Cochran, Fla. 1962, 138 So.2d 500; State ex rel. Cooper v. Coleman, 1939, 138 Fla. 520, 189 So. 691; 9 Fla.Jur., Criminal Law, section 17, pages 27-28. In its application to penal and criminal statutes, the due process requirement of definiteness is of especial importance. If such statutes, in defining criminal offenses, omit certain necessary and essential provisions which serve to impress the acts committed as being wrongful and criminal, the courts are not at liberty to supply the deficiencies or undertake to make the statutes definite and certain. 16 Am.Jur.2d, Constitutional Law, section 552, pages 952-954.
We have examined the cases cited by the court below in its order and by the state in support of affirmance and do not find them persuasive as to the statutory offense here prescribed. We can characterize the crime set out in the statutory proscription before us as a new offense, since there is no decision under it; nor have we found any precedents or case law from other jurisdictions dealing with a like statute. There are no appropriate common-law guidelines *37 as to what one can lawfully do under the statute, and there is no familiar practice or workable standard for use by attorneys in applying it. As to application of the Ragen case by the circuit court in the instant case, it must be observed that the statute there considered concerned an altogether different offense, where scienter was involved and where the standard had long been established and used.
Throughout the history of the legal profession, attorneys have remained highly individualistic in the area of legal fees. This is so, because there are such considerations as the degree of a lawyer's proficiency and success, his professional and ethical standing and reputation, his specialization or experience and training, and the resultant desire by a client for the services of a certain attorney. Violation of the present statutory section, a felony, can result in imprisonment in the state prison for not less than one year nor more than five, or a fine of not less than $1,000 nor more than $5,000, or both. One jury and judge, applying the statute, could find as unreasonable a given fee, while another jury and judge under identical circumstances could conclude that a larger fee was proper. This could be especially true as to the range of fees found reasonable in the so-called higher and lower income and cost living areas of the state. An attorney, searching earnestly for precedents in an effort to keep to what is safe, could not possibly know but could only speculate as to why one lawyer was adjudged a felon and the conduct of another deemed not violative, when the fee charged by the latter was perhaps considerably in excess of the one charged by the former under a seemingly parallel situation. As apt today as when pronounced is the observation of the court in United States v. Reese, 1876, 92 U.S. 214, 23 L.Ed. 563, "It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would, to some extent, substitute the Judicial for the Legislative Department of the Government."
We simply say that the statutory section in question is too vague and indeterminate to establish for guidance of attorneys an ascertainable standard of guilt. Accordingly, we find that section 72.40(2) (a), Florida Statutes, F.S.A., is void, in that attorneys prosecuted and convicted under it will be deprived of their organic right of due process of law. The final order of the circuit court here reviewed is reversed, and appellant shall be discharged.
It is so ordered.
THOMAS, ROBERTS and CALDWELL, JJ., concur.
THORNAL, C.J., dissents with opinion.
O'CONNELL, J., dissents.
ERVIN, J., dissents and concurs with THORNAL, C.J.
THORNAL, Chief Justice (dissenting).
I disagree because it appears to me that the statute provides a reasonably ascertainable standard of guilt. See McArthur v. State, Fla., 191 So.2d 429, opinion filed September 21, 1966.
ERVIN, J., concurs.
NOTES
[1] "(2) It shall be unlawful for any person:

"(a) Rendering any service in connection with the placement of a child for adoption, or in connection with the placement of a child with one other than its parents, to charge or receive from or on behalf of either the natural parent or parents of the child to be adopted or placed, or from or on behalf of the person or persons legally adopting, or accepting, such child any compensation or thing of value whatsoever for the placement service, other than that now or hereafter allowed by law; but this shall not be construed to prohibit the payment by any interested persons of reasonable charges or fees for hospital or medical services, for the birth of a child or medical care for the mother or child incident thereto, or for legal services, or costs of court for an adoption suit or proceeding."