576 So.2d 1310 (1991)
Marcus PERKINS, et al., Petitioners,
v.
STATE of Florida, Respondent.
No. 75990.
Supreme Court of Florida.
March 14, 1991.
*1311 Bennett H. Brummer, Public Defender, and Marti Rothenberg and Harvey J. Sepler, Asst. Public Defenders, Eleventh Judicial Circuit, Miami, for petitioners.
Robert A. Butterworth, Atty. Gen., Janet Reno, State Atty., and Richard L. Shiffrin, Asst. State Atty., Miami, for respondent.
PER CURIAM.
We have for review State v. Perkins, 558 So.2d 537 (Fla. 3d DCA 1990), which certified a question of great public importance[1]:
Is the defense of self defense available for a killing that occurred when both the defendant and the decedent were engaged in an attempt to traffic in cocaine and the decedent was the first to use deadly force?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative, quash the opinion below, and remand for further proceedings.
The two Petitioners, Marcus Perkins and Rodney Guy, attempted to negotiate a drug deal through their codefendant, Calvin Lazier.[2] In this deal, both Perkins and Lazier approached Anthony Kimble to buy cocaine, while Guy remained in the vicinity.
Unknown to Petitioners, Kimble had no intention of selling any drugs. Upon encountering Petitioners, Kimble pulled a gun and tried to rob Perkins and Lazier of the $11,000 they had brought to purchase the drugs. In the ensuing struggle, Kimble shot Perkins; but Perkins then managed to take Kimble's gun away and shoot Kimble with it. Perkins survived, but Kimble died.
The defendants were charged with attempted cocaine trafficking and first-degree murder. During pretrial proceedings, the state conceded that Perkins acted in self defense,[3] but later argued that Perkins was barred from raising a legal claim of self defense because he was involved in a "forcible felony" as defined in Florida Statutes.
Under section 776.041(1), Florida Statutes (1987), the defense of self defense
is not available to a person who:
(1) Is attempting to commit, committing, or escaping after the commission of, a forcible felony. ...
(Emphasis added.) Section 776.08, Florida Statutes (1987), defines "forcible felony" as:
treason; murder; manslaughter; sexual battery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and any other felony which involves the use or *1312 threat of physical force or violence against any individual.

(Emphasis added.)
The trial court granted a pretrial motion in limine ruling that the defense of self defense was available. Later, the trial court granted a motion to dismiss the murder charges.
The state appealed the dismissal, and the Third District reversed. It found that the crime of trafficking in cocaine inherently involves a propensity to violence and thus qualifies as a "forcible felony"; therefore, a claim of self defense was not available to these defendants pursuant to the statutes quoted above. Perkins, 558 So.2d at 538-39. In support of this conclusion, the district court cited only dicta from other district court cases describing a propensity for violence that sometimes accompanies drug trafficking. E.g., State v. Amaro, 436 So.2d 1056, 1061 (Fla. 2d DCA 1983).
One of the most fundamental principles of Florida law is that penal statutes must be strictly construed according to their letter. E.g., State v. Jackson, 526 So.2d 58 (Fla. 1988); State ex rel. Cherry v. Davidson, 103 Fla. 954, 139 So. 177 (1931); Ex parte Bailey, 39 Fla. 734, 23 So. 552 (1897). This principle ultimately rests on the due process requirement that criminal statutes must say with some precision exactly what is prohibited. E.g., Brown v. State, 358 So.2d 16 (Fla. 1978); Franklin v. State, 257 So.2d 21 (Fla. 1971); State v. Moo Young, 566 So.2d 1380 (Fla. 1st DCA 1990). Words and meanings beyond the literal language may not be entertained nor may vagueness become a reason for broadening a penal statute.
Indeed, our system of jurisprudence is founded on a belief that everyone must be given sufficient notice of those matters that may result in a deprivation of life, liberty, or property. Scull v. State, 569 So.2d 1251 (Fla. 1990) (on petition for clarification); Franklin, 257 So.2d at 23. For this reason,
[a] penal statute must be written in language sufficiently definite, when measured by common understanding and practice, to apprise ordinary persons of common intelligence of what conduct will render them liable to be prosecuted for its violation.
Gluesenkamp v. State, 391 So.2d 192, 198 (Fla. 1980), cert. denied, 454 U.S. 818, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981) (citations omitted). Elsewhere, we have said that
[s]tatutes criminal in character must be strictly construed. In its application to penal and criminal statutes, the due process requirement of definiteness is of especial importance.
State ex rel. Lee v. Buchanan, 191 So.2d 33, 36 (Fla. 1966) (citations omitted); accord State v. Valentin, 105 N.J. 14, 519 A.2d 322 (1987). Thus, to the extent that definiteness is lacking, a statute must be construed in the manner most favorable to the accused. Palmer v. State, 438 So.2d 1, 3 (Fla. 1983); Ferguson v. State, 377 So.2d 709 (Fla. 1979).
The rule of strict construction also rests on the doctrine that the power to create crimes and punishments in derogation of the common law inheres solely in the democratic processes of the legislative branch.[4]Borges v. State, 415 So.2d 1265, 1267 (Fla. 1982); accord United States v. L. Cohen Grocery Co., 255 U.S. 81, 87-93, 41 S.Ct. 298, 299-301, 65 L.Ed. 516 (1921) (applying same principle to Congressional authority). As we have stated,
The Florida Constitution requires a certain precision defined by the legislature, not legislation articulated by the judiciary. See Article II, Section 3, Florida Constitution.
Brown, 358 So.2d at 20; accord Palmer, 438 So.2d at 3. This principle can be honored only if criminal statutes are applied in their strict sense, not if the courts use some minor vagueness to extend the statutes' *1313 breadth beyond the strict language approved by the legislature. To do otherwise would violate the separation of powers. Art. II, § 3, Fla. Const.
Explicitly recognizing the principles described above, the legislature has codified the rule of strict construction within the Florida Criminal Code:
The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
§ 775.021(1), Fla. Stat. (1987).
We thus must determine whether the district court honored the legal rule described here. This question hinges on the exact meaning of the final clause of section 776.08, Florida Statutes, which defines forcible felony to include "any other felony which involves the use or threat of physical force or violence against any individual" (emphasis added). The district court below concluded that cocaine trafficking fits this description because of "the propensity for violence inherent in narcotics trafficking." Perkins, 558 So.2d at 538.
Certainly, violence sometimes accompanies narcotics trafficking, as it does many other types of crimes. Yet, contrary to the district court's conclusion, this fact alone does not place drug trafficking within the letter of the statutory language upon which the opinion under review rests.
The statute does not say that a forcible felony is any felony that "may sometimes" involve violence, or even a felony that "frequently does" involve violence. Rather, the statute requires that the felony actually "involves the use or threat of physical force or violence against any individual" (emphasis added). § 776.08, Fla. Stat. (1987). Taken in its ordinary and plain meaning, the term "involve" means "to contain within itself, to make necessary as a condition or result." Oxford American Dictionary 349 (1980). Its general sense is "to include." Id.
Thus, in the strict and literal sense required by Florida law, this language can only mean that the statutory elements of the crime itself must include or encompass conduct of the type described. If such conduct is not a necessary element of the crime, then the crime is not a forcible felony within the meaning of the final clause of section 776.08. See § 776.08, Fla. Stat. (1987); accord Bowes v. State, 500 So.2d 290 (Fla. 3d DCA 1986) (marijuana trafficking not a forcible felony), review denied, 506 So.2d 1043 (Fla. 1987).
We acknowledge some slight ambiguity in the meaning of the word "involves," albeit one clearly insufficient to void the statute for vagueness. While the legislature could have chosen more precise terminology, the rule of strict construction requires us to adhere to the stricter sense of statutory language. Thus, to the extent that the word "involves" is vague or ambiguous, the district court was under an obligation to construe it in the manner most favorable to the accused. Art. I, § 9, Art. II, § 3, Fla. Const.; § 775.021(1), Fla. Stat. (1987); Brown; Palmer; Buchanan. In other words, a "forcible felony" under the final clause of section 776.08 is a felony whose statutory elements include the use or threat of physical force or violence against any individual.[5]
We are mindful of the state's argument *1314 that the doctrine of ejusdem generis[6] requires that the language of section 776.08 be read, as the district court did, by looking behind its precise language. Under this argument, the statute would be construed to include all crimes similar to the dozen felonies expressly included in the definition of "forcible felony." The state points out that the list includes treason and burglary and argues that these two crimes, like drug trafficking, can be accomplished without the use or threat of force or violence.[7]
However, this construction depends upon yet another minor ambiguity in the statutory language. As noted above, such vagueness must be construed strictly, in the manner most favorable to the accused. The state's reliance on common law rules of construction such as ejusdem generis must yield to the rule of strict construction. Art. I, § 9; Art II, § 3, Fla. Const.; Buchanan, 191 So.2d at 36; Brown, 358 So.2d at 20.
For the foregoing reasons, we answer the certified question in the affirmative and quash the opinion below. This cause is remanded to the district court for further proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
KOGAN, J., concurs specially with an opinion, in which BARKETT, J., concurs.
KOGAN, Justice, specially concurring.
I fully agree with the majority opinion but write separately to express my belief that petitioners' claim also implicates article I, section 2 of the Florida Constitution. The right to fend off an unprovoked and deadly attack is nothing less than the right to life itself, which this portion of our Constitution expressly declares to be a basic right. Florida's Constitution states:
Basic rights.  All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty. ...
Art. I, § 2, Fla. Const. (emphasis added).
This constitutional right, I believe, applies in two different senses. First, petitioners have a fundamental interest in defending their life and liberty in court by mounting a reasonable defense, such as the one they now assert. Id. Second, petitioners had a fundamental right to meet force with force in the field because the initial attack mounted against them by Kimble was illegal and unjustified. Under article I, section 2, the state cannot deprive individuals of this right of self defense without demonstrating a compelling state interest achieved by the most narrowly tailored means. As we stated in the case of In re Estate of Greenberg, 390 So.2d 40, 43 (Fla. 1980), appeal dismissed, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981), a strict-scrutiny analysis applies whenever a statutory classification "impinges upon a fundamental right explicitly or implicitly protected by the constitution."
I do not imply that the state always is precluded from depriving certain persons of the right of self defense. The state clearly has a compelling state interest in disallowing the use of self defense when a person's own unprovoked, aggressive, and felonious acts set in motion an unbroken chain of events leading to a killing or other injury, with some exceptions not applicable here.[8]See, e.g., 1 W. LaFave & A. Scott, *1315 Substantive Criminal Law § 5.7, at 657-58 (1986) (discussing exceptions generally).
For example, Kimble clearly forfeited the right of self defense in this instance by pulling a gun and shooting Perkins without provocation. Thus, the state can satisfy the compelling state interest test as to Kimble. However, this conclusion does not dispose of Mr. Perkins' ability to raise a claim of self defense.
Here, the state has conceded that Perkins responded in kind to Kimble's violence after wrestling the gun away in a deadly struggle. By chance alone, only Kimble died. Even in oral argument, counsel for the state admitted he has no evidence substantial enough to rebut Perkins' claim of self defense on the merits. Yet after making this concession, the state now asks us to turn both reason and law on their heads by heaping total blame on Perkins when Kimble, the initial aggressor, clearly bore the greatest guilt.
In effect, the state has conceded that it can demonstrate no compelling interest in depriving Perkins of the right of self defense guaranteed by article I, section 2. Thus, accepting the state's argument would render the statute unconstitutionally overbroad, since the statute thereby would apply to situations protected by an explicit, fundamental right. Compare art. I, § 2, Fla. Const. with Greenberg.
However, I agree with the majority that the state's construction is contrary to well-established rules of construction. I also believe that the majority's construction is in harmony with the right to defend life and liberty guaranteed by article I, section 2 of the Florida Constitution. Accordingly, I fully concur in the majority opinion.
BARKETT, J., concurs.
NOTES
[1] The district court did not phrase the question itself. We therefore pose a question that reflects the central issue of the case.
[2] Lazier has not joined in the present review of this case. We are assuming solely for purposes of this review that Perkins actually was involved in an attempt to traffic in cocaine. This assumption should not be interpreted as a judgment on the ultimate question of Perkins' guilt or innocence on this charge.
[3] The following exchange occurred between the court and the prosecutor:

THE COURT: I'm going to grant the motion.
And I'm going to find that self-defense is available in this case.
MR. SHIFFRIN: I would suggest to the Court that, based upon Your Honor's ruling, the case would be subject to dismissal because the facts are stipulated.
The State is aware of the facts and the Defense is aware of the facts.
The defendant's actions were as a result of a drug rip.
....
MR. SHIFFRIN: I would suggest that the case would be subject to dismissal based on these facts.
THE COURT: I don't have a sworn motion to dismiss. But based upon your representations that those are the facts and 
I would, of course, if those are the facts, I would grant a motion to dismiss upon a motion being made.
[4] The legislature has determined by statute that the common law of England in relation to crimes remains in effect except (a) with regard to the modes and degrees of punishment, and (b) where there is an existing statute on the same subject. § 775.01, Fla. Stat. (1989). In effect, very little if any of the common law of crimes remains in force, because Florida's extensive criminal code has largely displaced it. See chs. 775-960, Fla. Stat. (1989).
[5] We thus also reject the district court's conclusion that, by including drug trafficking as a possible predicate for felony murder in 1987, the legislature intended this particular crime to be considered a "forcible felony." State v. Perkins, 558 So.2d 537, 539 n. 1 (Fla. 3d DCA 1990) (citing § 782.04, Fla. Stat. (1987)). Had this been the legislature's true intent, the legislature in all likelihood would have done the more logical thing and simply amended the statute that actually defines the term "forcible felony." § 776.08, Fla. Stat. (1987). No such amendment was made. The failure to change a definition is strong evidence it has remained unchanged. Moreover, the manifest legislative intent is for chapter 776, defining justifiable uses of force, to operate as an exception to the homicide statutes contained in chapter 782. The district court's opinion reaches virtually the opposite conclusion and, in the process, exceeds the strict language of section 776.08.
[6] This is a Latin phrase meaning "[o]f the same kind, class, or nature." Black's Law Dictionary 517 (6th ed. 1990). The phrase refers to the doctrine that a general term preceded by a list of specific terms will be construed to be limited to the same class described in the list. Dunham v. State, 140 Fla. 754, 192 So. 324 (1939).
[7] Illuminating this logic at oral argument, the state contended that a crime "involves" violence if violence is a "foreseeable" result.
[8] The statute, for example, contemplates that self defense may be available to the initial aggressor if the killing does not occur in the same sequence of events that flows from that aggressor's own violence, § 776.041(1), Fla. Stat. (1987), or if the aggressor has attempted to withdraw and has indicated this intention before the victim counterattacks. § 776.041(2)(b), Fla. Stat. (1987). In addition, an initial aggressor may be entitled to claim self defense if the victim responds with extreme force and the aggressor then attempts to flee and exhausts all means of escape before killing the victim. § 776.041(2)(a), Fla. Stat. (1987). These exceptions also reflect the common sense underlying the statute. In all of them, some event occurs clearly demonstrating that the initial aggressor has abandoned the aggression. At this point, any further deadly aggression by either party ceases to be an act of self defense. I find these exceptions consistent with article I, section 2 of the Florida Constitution.