698 So.2d 533 (1997)
STATE of Florida, Petitioner,
v.
MARK MARKS, P.A., et al., Respondents.
No. 85920.
Supreme Court of Florida.
July 17, 1997.
*534 Robert A. Butterworth, Attorney General and Richard L. Polin, Assistant Attorney General, Miami, for Petitioner.
Mark Hicks, of Hicks, Anderson & Blum, P.A., Miami, and H. Dohn Williams, Jr. of H. Dohn Williams, Jr., P.A., Fort Lauderdale, on behalf of Mark Marks; Archibald J. Thomas, III of Archibald J. Thomas, III, P.A., Jacksonville, on behalf of Gary Marks; J. David Bogenschutz of Bogenschutz & Dutko, P.A., Fort Lauderdale, on behalf of Ronald J. Centrone; and Ronald S. Guralnick of Ronald S. Guralnick, P.A., Miami, on behalf of Noreen Roberts and Denise Beloff, for Respondents.
Bill Nelson, Insurance Commissioner and Charles Faircloth, Jr., Senior Attorney, Tallahassee, for Amicus Curiae Department of Insurance.
Robert S. Glazier, Miami, for Amicus Curiae The Academy of Florida Trial Lawyers.
KOGAN, Justice.
We have for review State v. Mark Marks, P.A., 654 So.2d 1184 (Fla. 4th DCA 1995), in which the district court certified the following question to be of great public importance:
WHETHER SECTION 817.234(1), FLORIDA STATUTES (1987), IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO ATTORNEYS IN THE REPRESENTATION OF THEIR CLIENTS SINCE IT DOES NOT PROVIDE ADEQUATE NOTICE OF WHEN AN OMISSION WILL RESULT IN AN "INCOMPLETE" CLAIM UNDER THE STATUTE?
Id. at 1194. We have jurisdiction pursuant to article V, section 3(b)(4), of the Florida Constitution. We find that by using the term "incomplete," section 817.234(1), Florida Statutes (1987), does not provide sufficient notice of the conduct by attorneys that it proscribes and that it is subject to arbitrary enforcement when applied to attorneys in the representation of their clients. We therefore answer the certified question in the affirmative.[1]
The State initiated this case by filing an information against a total of twelve defendants. *535 The information was amended several times. The final amended information, dated August 21, 1992, charged only eight defendants.[2] The defendants included the firm Mark Marks, P.A., three attorneys in the firm,[3] three employees of the firm,[4] and a doctor who conducted medical examinations of several of the firm's third party insurance claim clients.[5] The counts in the information were as follows:
COUNT 1: Racketeer Influenced and Corrupt Organization (RICO)[6]
COUNT 2: Conspiracy RICO
COUNT 3: Scheme to Defraud
COUNTS 4-13: Perjury
COUNT 14: Grand Theft
COUNT 15: Insurance Fraud
COUNT 18: Grand Theft
COUNT 19: Insurance Fraud
COUNT 20: Grand Theft
COUNT 21: Insurance Fraud[7]
COUNTS 22-23: Insurance Fraud
COUNTS 29-30: Grand Theft
COUNTS 31-33: Insurance Fraud
COUNT 34: Grand Theft
COUNT 35: Insurance Fraud
In summary, the information charged the eight defendants with engaging in various illegal activities including but not limited to:
-Preparation and submission of false and fraudulent medical tests and procedures for the purpose of enhancing the settlement value of insurance claims;
-Soliciting clients to undergo unnecessary and dangerous medical tests and procedures for the purpose of enhancing the settlement value of insurance claims;
-Altering, forging and concealing medical reports, medical test results and medical bills to enhance the settlement value of insurance claims;
-Subornation of false, fraudulent and perjured testimony by clients and other witnesses regarding material matters in order to enhance the settlement value of insurance claims; and
-Theft of monies from various insurance companies by means of the foregoing acts.
In January of 1993, the State filed a second information against four of the same defendants.[8] The illegal activities alleged in the information were similar to those alleged in the first information. The counts alleged in that complaint were as follows:
COUNT 1-2: Insurance Fraud
COUNT 3: Grand Theft
COUNT 4: Insurance Fraud
COUNT 5: Insurance Fraud
COUNT 6: Grand Theft
COUNT 7: Grand Theft
COUNT 8: Insurance Fraud
COUNT 9: Grand Theft
COUNT 10: Insurance Fraud
COUNT 11: Grand Theft
A large number of the counts in both informations were based on the attorneys' actions in representing various clients in insurance claims during pre-suit settlement negotiations. The State alleged that the attorneys' actions violated the false and fraudulent insurance claim statute, section 817.234(1)[9] *536 and (3),[10] Florida Statutes (1987). We are concerned here with the counts charging violations of section 817.234, along with the grand theft counts based upon the alleged violations of section 817.234.
Early in the proceedings, the defendants filed a number of motions challenging section 817.234 and the counts in the first information that were based upon that statute. The trial court denied the motions. Following the disqualification of the judge who ruled on these motions, the defendants filed several motions to reconsider the prior judge's rulings. In two orders dated October 14, 1993, the trial court reconsidered the defendants' claims regarding section 817.234. The first order addressed the counts raised in the first information. The trial court determined that the structure of section 817.234 as well as the insurance code, particularly section 627.4136, Florida Statutes (1993),[11] indicated that section 817.234 did not apply to third-party insureds or their attorneys. Accordingly, the trial court dismissed counts 15, 18, 19, 22, 23, 29, 30, 31, 32, 33, 34 and 35, as well as the predicate acts of count 1 which coincided with these counts, because they all pertained to third-party claims.[12]
In the second order, which addressed the counts raised in the second information, the court adopted the findings and conclusions of its initial order and dismissed all counts based on third-party claims. The counts dismissed from the second information were counts 1, 2, 3, 5, 7, 8, 9, 10, and 11.
Prior to the trial court's orders dismissing these counts, the defendants filed several motions to dismiss various counts in the first information in which the defendants were charged with violating section 817.234(1) by submitting incomplete demand letters to insurers. According to the State, the defendants' demand letters omitted medical records or statements that were unfavorable to the claim. The trial court, in a third order dated January 27, 1994, addressed the defendants' motions to dismiss, but its findings only applied to count 21[13] and count 20[14] of the first information, as well as the corresponding predicate acts associated with those counts.[15] The trial court did not directly address the remaining counts the defendants challenged in these motions because they pertained to third-party claims and thus already had been dismissed by the court's prior order.
In this third order, the trial court first addressed and rejected the defendants' claim that section 817.234 was unconstitutionally vague because it conflicted with section 627.736(7)(b), Florida Statutes (1987), the personal injury protection benefits statute. *537 The trial court thereafter addressed the defendants' claim that section 817.234 was unconstitutionally vague because, in using the term "incomplete," it failed to warn attorneys filing insurance claims on behalf of their clients that omitting unfavorable medical reports in a pre-suit demand statement could violate the statute. The trial court agreed. The court found that as applied to attorneys representing their clients, the statute failed to provide sufficient notice and was susceptible to arbitrary enforcement. Moreover, the trial court rejected the State's claim that the scienter language saved the statute from challenges of unconstitutional vagueness. Accordingly, the trial court dismissed counts 20 and 21, as well as the corresponding predicate acts.
On appeal, the district court consolidated the cases arising from the three orders as they all involved the question of whether section 817.234(1) was unconstitutionally vague as applied to attorneys in the representation of their clients. Marks, 654 So.2d at 1185. The district court answered that question affirmatively because it concluded section 817.234(1) did not provide adequate notice as to when omissions by the attorney would result in an "incomplete" claim. Id. at 1190. The district court further held that the legislature intended both subsection (1) and subsection (3) of section 817.234 to apply to third-party claims. Id. at 1190-93. Based on its findings, the district court reversed the trial court's orders of dismissal and remanded with direction to reinstate all of the counts and predicate acts except those which were totally and exclusively dependent upon alleged incomplete statements tendered by the attorneys in the representation of their clients. Id. at 1187. On the State's motion for rehearing/certification the district court certified the question above as one of great public importance. Id. at 1193-94.

I. Vagueness

We first address the question certified by the district court. While the issue of whether the term "incomplete" renders section 817.234(1) unconstitutionally vague is only expressly addressed in the trial court's third order, the issue is also relevant to a number of counts which the trial court dismissed in its first two orders. Specifically, the issue is relevant to those counts dismissed in the first two orders which, like counts 20 and 21 in the first information, were based on the attorneys' alleged conduct of filing incomplete claims. Our resolution of the certified question therefore will impact certain counts dismissed in all three of the trial court's orders.
In order for a criminal statute like section 817.234(1) to withstand a void-for-vagueness challenge the language of the statute must provide adequate notice of the conduct it prohibits when measured by common understanding and practice. See Brown v. State, 629 So.2d 841, 842 (Fla.1994); State v. Rou, 366 So.2d 385 (Fla.1978). Additionally, the statute must define the offense in a manner that does not encourage arbitrary and discriminatory enforcement. See Brown, 629 So.2d at 842; State ex rel. Lee v. Buchanan, 191 So.2d 33 (Fla.1966). The State alleges that section 817.234(1) meets these requirements. Respondents, however, maintain that in using the term "incomplete," section 817.234(1) fails to inform attorneys of the conduct it proscribes and this imprecision may invite arbitrary and discriminatory enforcement.
Section 817.234 does not define the term "incomplete," but the absence of a definition is not dispositive of vagueness. "The legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague." State v. Hagan, 387 So.2d 943, 945 (Fla.1980). Rather, it is an attorney's unique obligations when viewed in conjunction with the term "incomplete" that renders this particular statute vague as applied to attorneys. Because attorneys, pursuant to statute, case law, procedural rules, and rules of professional regulation, are customarily required to withhold certain types of information throughout the representation of a client, the term "incomplete" without more does not give attorneys an ascertainable standard of guilt by which to measure their conduct. Cf. Lee, 191 So.2d at 36-37.
The district court pointed to a number of sources that shape the attorney's role in the *538 adversarial process. Specifically, the district court stated:
Attorneys are guided by numerous different rules, laws, and cases dealing with the atypical obligations of an attorney in an advocate role. Attorneys and their clients enjoy a confidential relationship, which includes constraints upon information that can be disclosed to others. See § 90.502, Fla. Stat. (1993); R. Regulating. Fla. Bar 4-1.6. Once a suit is initiated, rules of discovery provide for an exchange of information between adversaries. Even then, some items do not have to be disclosed to an adversary absent special findings by a trial court. Fla.R.Civ.P. 1.280(b). Specifically, the identities and/or opinions of a non-witness work product expert are not discoverable absent a showing of exceptional circumstances under rule 1.280(b)(4)(B). Myron v. Doctors Gen., Ltd., 573 So.2d 34 (Fla. 4th DCA 1990). Medical reports based on an examination requested by a party do not need to be delivered absent a request for such. Fla.R.Civ.P. 1.360(b); Smiles v. Young, 271 So.2d 798 (Fla. 3d DCA), cert. denied, 279 So.2d 305 (Fla.1973). In personal injury protection claims, a party must turn over all medical records concerning a specific condition only after requesting and receiving a copy of medical reports from a medical examination requested by the insurer. § 627.736(7)(b), Fla. Stat. (1993). Finally, the confidentiality of medical records is statutorily protected from disclosure in most circumstances until a proper subpoena has been issued. See, e.g., § 455.241(2), Fla. Stat. (1993).
Marks, 654 So.2d at 1187. Guided by sources such as these, instructors of legal education courses have indicated that less than complete disclosure in some contexts, including settlement negotiations, is acceptable. We cannot conclude that practicing attorneys would reach a different conclusion. Because less than complete disclosure by an attorney in the representation of his or her client is considered acceptable practice in certain instances and because section 817.234(1), does not indicate, in terms that a person of common intelligence would understand, in what instances less than complete disclosure by an attorney becomes a criminal offense, we conclude that the statute does not provide adequate notice of the conduct by attorneys that it proscribes. Cf. Hermanson v. State, 604 So.2d 775, 776 (Fla.1992).
The State's argument to the contrary is without merit. According to the State, section 817.234(1) is constitutional because it criminalizes nondisclosure of material information only when the nondisclosure is coupled with an intent to defraud, deceive, or injure the insurer. Moreover, the State contends the statute's specific intent requirement brings the statute into conformity with the rules, case law, and statutes that govern an attorney's conduct because these sources, like section 817.234(1), do not allow an attorney to perpetuate fraud.
A scienter or specific intent requirement may save certain statutes from a vagueness challenge. Specifically, a scienter requirement may save a statute from the objection that it punishes without warning an offense of which the accused was unaware. Screws v. United States, 325 U.S. 91, 102, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945). It will save a statute from this objection, however, only where the statute forbids a clear and definite act. Id. at 105, 65 S.Ct. at 1037; United States v. L. Cohen Grocery Co., 255 U.S. 81, 89, 41 S.Ct. 298, 300, 65 L.Ed. 516 (1921); see also Rou, 366 So.2d at 386; State v. DeLeo, 356 So.2d 306, 308 (Fla.1978); State v. Barquet, 262 So.2d 431, 438 (Fla. 1972). The definition of the act need not be derived directly from the statute. See Screws, 325 U.S. at 103, 65 S.Ct. at 1036 ("A requirement of a specific intent to deprive a person of a federal right made definite by decision or other rule of law saves the Act from any charge of unconstitutionality on the grounds of vagueness."); Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402 (1925)(finding the term "kosher" did not render statute void-for-vagueness where statute contained requirement of specific intent and the term "kosher" had a meaning well enough defined by sources outside the statute to enable one engaged in the trade to correctly apply it). The State however cannot, as it has here, rely on the scienter requirement alone to define the proscribed *539 act. It is not enough to say that a pre-suit statement filed by an attorney is "incomplete" and thus violates the statute if it is filed with intent to defraud, deceive, or injure an insurer.
Relying on intent to defraud, deceive, or injure to define the term "incomplete" is especially troublesome where, as here, the attorneys, pursuant to the various sources guiding their conduct, were under no clear duty to disclose the information they allegedly withheld. As the district court recognized:
A fraud is committed for the failure to disclose material information only when there is a duty to disclose such; and such duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them.
Mark Marks, 654 So.2d at 1189 (citing Chiarella v. United States, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980)); see also Gutter v. Wunker, 631 So.2d 1117, 1118 (Fla. 4th DCA 1994). Because an attorney's duty to disclose is uncertain under section 817.234(1), the intent element in that statute does nothing to clarify the conduct the statute proscribes. We are still left to wonder in what situations an attorney's nondisclosure will be subject to criminal prosecution.
Furthermore, the intent element is not an acceptable source on which to rely in defining the conduct proscribed by section 817.234(1), because intent is an after-the-fact determination made by the courts. See Rou, 366 So.2d at 386. As we recognized in State v. Wershow, 343 So.2d 605, 608 (Fla.1977)(quoting the dissent in Screws, 325 U.S. at 153, 65 S.Ct. at 1059), the constitution requires a definiteness defined by the legislature rather than argumentatively spelled out by the courts.
To avoid judicial encroachment into the legislature's role, the act a statute proscribes must be at least clear enough to avoid arbitrary enforcement. See Wershow, 343 So.2d at 607-08; Lee, 191 So.2d at 37. If the proscribed act is not made clear by the statute or some source outside the statute, such as the custom of a particular profession or trade, then those enforcing the statute may do so arbitrarily. That is exactly what could occur with section 817.234(1). One judge and jury might conclude that an attorney submitting a demand letter to an insurer without all relevant medical reports violated the statute, while another judge and jury might conclude an attorney was simply acting in accord with the rules and statutes concerning the confidentiality of medical records. Cf. Lee, 191 So.2d at 37. The risk of arbitrary enforcement was, in fact, demonstrated in this case by the State's decision to alter its interpretation of section 817.234(1), with regard to the degree of disclosure the statute required, three times during the course of the proceedings.
Based on the foregoing, we find that the term "incomplete" renders section 817.234(1) vague as applied to attorneys in the representation of their clients. Consequently, we approve the district court's decision finding that all counts based on "incompleteness," including the corresponding predicate acts and the corresponding theft counts, were properly dismissed.[16] We recognize though that the term "incomplete" can be separated from the statute without any adverse effect on its remaining portions. See Cramp v. Board of Public Instruction, 137 So.2d 828, 830 (Fla.1962). Our holding on this matter therefore does not preclude the State from prosecuting attorneys for insurance fraud. On the contrary, the State may still prosecute an attorney pursuant to section 817.234(1) for filing "false" or "misleading" information concerning any fact or thing material to an insurance claim. It is *540 our opinion that the conduct at which the statute is aimed is amply encompassed by these two terms. If the legislature concludes otherwise, it may amend section 817.234(1) to clarify the meaning of the term "incomplete."[17]

II. Third-Party Claims

Although we conclude that the State may prosecute an attorney pursuant to section 817.234(1) for filing false or misleading information, the question remains as to whether this holds true for attorneys representing injured third parties to insurance claims, as opposed to attorneys representing insured first parties. The remaining counts that the trial court dismissed were based either on a violation of section 817.234(1) for submitting false or misleading information or a violation of section 817.234(3).[18] The trial court dismissed these counts in its first and second orders because it found that section 817.234 was not applicable to third-party claims. If, as the State contends, section 817.234 applies to both first and third-party claims, then the trial court erroneously dismissed these counts.
The trial court offered section 627.4136, Florida Statutes (1993), the nonjoinder statute, as the primary reason for its conclusion that section 817.234 did not apply to third-party claims. After examining the history of section 817.234, the trial court looked to the insurance code for guidance on how to define the terms "any person" and "claimant" as those terms were used in section 817.234(1) and (3), respectively. It found the nonjoinder statute had a dispositive impact on how these terms were defined. Specifically, the trial court held:
The nonjoinder statute divests any party other than the insured of any interest in a liability insurance policy. No third-party has any interest in an insurance policy until which time such third party has obtained a settlement or verdict against the insured. Since the third-party possesses no interest in the policy, there can be no claim for payment under the policy by the third-party. Accordingly, the term "any person" in subsection 1 and "claimant" in subsection 3 can and should be construed as "any insured" as only the insured possess an interest so only the insured can make a claim.
We do not believe it was necessary for the trial court to look beyond the language of section 817.234 in interpreting subsections (1) and (3) of the statute. When the language of a statute is clear and unambiguous, as is the case here, the language should be given effect without resort to extrinsic guides to construction. City of Miami Beach v. Galbut, 626 So.2d 192, 193 (Fla.1993); Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). The fact that we are dealing with a penal statute does not alter our analysis, because penal statutes, as a fundamental rule, must be strictly construed. Perkins v. State, 576 So.2d 1310, 1312-13 (Fla.1991).

A. Section 817.234(1)

Section 817.234(1), contains the phrase "any person." In arguing that this term means "any insured" the respondents attempt to limit the express terms of an unambiguous statute. We have in the past indicated that a court is without the power to construe a statute in such a manner. Holly, 450 So.2d at 219 (quoting American Bankers Life Assurance Co. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)). Moreover, we have found that by using the language "any person" in section 624.155(1), Florida Statutes (1993),[19] the legislature evidenced its intent that both first and third parties be allowed to bring civil suit when damaged by the enumerated acts of an insurer. Auto-Owners Ins. Co. v. Conquest, 658 So.2d 928, 929 (Fla.1995). As we did in Auto Owners, we find the term "any person" is clear and unequivocal. By using this language, the *541 legislature intended to prevent all persons, not just those with a contract with the insurer, from committing insurance fraud. Our conclusion garners additional support from the fact that the legislature expressly used the term "insured party" in other subsections of section 817.234. See § 817.234(2), (4). "The legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended." Department of Professional Regulation v. Durrani, 455 So.2d 515, 518 (Fla. 1st DCA 1984); see also Ocasio v. Bureau of Crimes Compensation, 408 So.2d 751, 753 (Fla. 3rd DCA 1982); accord Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla.1995).
The statute's use of the language "a claim for payment or other benefit pursuant to an insurance policy" does not alter our conclusion that section 817.234(1) applies to both first and third-party claims. This language does not indicate that a party must have a legal interest in an insurance policy in order to make a claim pursuant to the policy and thus become subject to the provisions of section 817.234(1). Cf. Kiddie v. State, 574 P.2d 1042, 1047 (Okla.Crim.App.1977)(finding privity of contract between accused and insurer unnecessary to pursue charges under a statute similar to section 817.234(1));[20]but see People v. Learman, 281 A.D. 583, 121 N.Y.S.2d 388, 391 (1953). On the contrary, this language when considered in conjunction with the term "any person" indicates that the statute applies to any claim made pursuant to an insurance policy with the intent to defraud. Cf. People v. Benson, 206 Cal. App.2d 519, 23 Cal.Rptr. 908, 916-17 (1962)(finding statute similar to section 817.234(1) applied to every person who had intent to defraud), cert. denied, 374 U.S. 806, 83 S.Ct. 1691, 10 L.Ed.2d 1030 (1963), disapproved on other grounds, People v. Perez, 62 Cal.2d 769, 44 Cal.Rptr. 326, 401 P.2d 934 (1965). "Any claim" necessarily includes claims made by third parties during settlement negotiations, as was the case here. As the district court recognized, insurance companies often negotiate settlements with injured parties or their attorneys despite Florida's nonjoinder statute. Marks, 654 So.2d at 1191. If we were to interpret the statute so as to treat the demands that arise out of these settlement negotiations differently than first-party claims, we would not be fully serving the purpose of this legislationto deter insurance fraud. Consequently, we find section 817.234(1) applicable to both first-party and third-party claims.
Even if we were to look to the legislative history to discern the legislature's intent with regard to section 817.234(1) we would reach the same conclusion. As the district court noted, section 817.234 was originally enacted as part of the insurance chapter. Ch. 76-266, § 7, Laws of Fla. However, the statute was later moved to the chapter dealing with fraudulent practices. Ch. 79-81, § 1, Laws of Fla. The district court correctly recognized that this transfer of the statute indicates that the statute has more to do with fraud than insurance. Marks, 654 So.2d at 1190. Consequently, we do not find, as did the trial court, that the legislative history of section 817.234 leads us to the insurance code and consequently the nonjoinder statute for guidance in interpreting the statute.
The legislative history, however, does lead us to conclude that the legislature intended section 817.234(1) to apply to "any person" and not just "any insured party." The original version of section 817.234(1) reads:
(1) Any insured party or insurer or insurance adjuster who, with intent, knowingly and willfully conspires to fraudulently violate any of the provisions of this part....
Ch. 76-266, § 7, Laws of Fla. (emphasis added). In 1977, the statute was amended and "Any insured party or insurer or insurance adjuster," was replaced with "Any person." Ch. 77-468, § 36, Laws of Fla. When the legislature amends a statute, we presume it intended the statute to have a different *542 meaning than that accorded it before the amendment. See Capella v. City of Gainesville, 377 So.2d 658 (Fla.1979); Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977). Accordingly, we find that the legislative history, like the plain language of section 817.234(1), supports a conclusion that the statute applies to both first-party and third-party claims. We therefore approve the district court's decision reversing the trial court's orders and remanding with the direction that the trial court reinstate all counts based on section 817.234(1) which were not totally and exclusively dependent on alleged incomplete statements.

B. Section 817.234(3)

As mentioned previously, the trial court dismissed several counts against the attorney defendants brought pursuant to section 817.234(3) because it concluded, as it did with section 817.234(1), that this provision did not apply to third-party claims.[21] We find our analysis regarding the application of section 817.234(1) to third-party claims is also dispositive with regard to section 817.234(3). Since a third party can make a claim pursuant to section 817.234(1), it follows that a third party may also be classified as a claimant. Consequently, we conclude that the reference to "claimant" in 817.234(3) does not limit that provision's application to first-party claims.
While our analysis regarding third-party claims is equally applicable to section 817.234(1) and (3), the same does not hold true for our vagueness analysis. We do not find that section 817.234(3) suffers the same infirmities as section 817.234(1).[22] Consequently, we approve the district court's decision finding erroneous the trial court's dismissal of the counts brought pursuant to section 817.234(3) and ordering the reinstatement of those counts.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] We emphasize that our holding on this issue is limited to the application of the term "incomplete" to attorneys in the representation of their clients.
[2] Not all eight defendants were charged in each count.
[3] The attorneys are Marvin Mark Marks a/k/a Mark Marks, Gary Marks, and Carl Borgan.
[4] The employees are Irene Raddatz a/k/a Irene Porter, Denise Beloff, and Noreen Roberts.
[5] The doctor is Ronald Centrone.
[6] Count 1 is based on various predicate acts including the acts which serve as the basis for a number of the remaining counts.
[7] Count 21 was not listed in the style of the information but was included in the body of the information.
[8] The four defendants are Mark Marks, P.A., Mark Marks, Gary Marks, and Ronald Centrone.
[9] Section 817.234(1), Florida Statutes (1987), provides in part:

(1)(a) Any person who, with the intent to injure, defraud or deceive any insurance company, including, but not limited to, any statutorily created underwriting association or pool of insurers or any motor vehicle, life, disability, credit life, credit, casualty, surety, workers' compensation, title, premium finance, reinsurance, fraternal benefit, or home or automobile warranty company:
1. Presents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim; or
2 . Prepares or makes any written or oral statement that is intended to be presented to any insurance company in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim,
is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[10] Section 817.234(3), Florida Statutes (1987), provides:

(3) Any attorney who knowingly and willfully assists, conspires with, or urges any claimant to fraudulently violate any of the provisions of this section or part XI of chapter 627, or any person who, due to such assistance, conspiracy, or urging on such attorney's part, knowingly and willfully benefits from the proceeds derived from the use of such fraud, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[11] Section 627.4136 is Florida's nonjoinder statute.
[12] In dismissing these counts the trial court dismissed all counts based on alleged violations of section 817.234(3). Consequently, the trial court did not address subsection (3) in its subsequent orders.
[13] Count 21 charged the defendants with submitting an incomplete demand letter in a first-party uninsured motorist claim. Specifically, the state charged the defendants with the fraudulently excluding a medical test and medical expert's report.
[14] Count 20 was the grand theft count based upon the acts alleged in count 21.
[15] Predicate acts S and R were the corresponding predicate acts to counts 20 and 21 that supported the RICO count (count 1).
[16] The counts that the trial court properly dismissed from the first information are predicate act Q (only the portion of the count alleging the defendants fraudulently excluded a medical report which materially lessened the severity of the third party's injuries), predicate act P (only the portion of the theft count corresponding to the excluded medical report), predicate act S, predicate act R, predicate act FF, predicate act GG, count 19 (only the portion of the count alleging the defendants fraudulently excluded a medical report which materially lessened the severity of the third party's injuries), count 18 (only the portion of the theft count corresponding to the excluded medical report), count 21, count 20, count 35, and count 34. The trial court properly dismissed from the second information all counts except counts 10 and 11.
[17] For example, the legislature might clarify what is meant by the term "incomplete" by identifying the information that an attorney must file at each stage in an insurance proceeding.
[18] The trial court also dismissed the corresponding theft counts.
[19] Section 624.155(1)provides in part:

(1) Any person may bring a civil action against an insurer when such person is damaged:
(a) By a violation of any of the following provisions by the insurer:....
[20] The pertinent portion of the Oklahoma statute at issue in Kiddie provided:

Every person who presents or causes to be presented any false or fraudulent claim, or any proof in support of any such claim, upon any contract of insurance for the payment of any loss ... shall be punishable by imprisonment... or by fine....
Okla. Stat. tit. 21, § 1662 (1971)(emphasis added).
[21] The counts based on section 817.234(3) were all contained in the first information. They were counts 15, 22, 23, and the corresponding predicate acts in count 1.
[22] We do not address any challenges to the constitutionality of section 817.234(3) other than the challenges made by the parties with respect to section 817.234(1). The parties did not present any independent basis for finding section 817.234(3) unconstitutionally vague.