THOMPSON, C.J.
The s^e appeals the dismissal of an information filed against William Ragland. We affirm.
Ragland, a student at Brevard County Community College (“BCC”), was arrested after campus security allegedly discovered in his vehicle a securely encased, unloaded 30.6 Browning Bolt Action Rifle, along with a box of ammunition. The information charged Ragland with a violation of section 790.115(2) (a), Florida Statutes (1999). Section 790.115 provides in part:
790.115. Possessing or discharging weapons or firearms at a school-sponsored event or on school property prohibited; penalties; exceptions
[[Image here]]
(2)(a) A person shall not possess any firearm, electric weapon or device, destructive device, or other weapon, including a razor blade, box cutter, or knife, except as authorized in support of school-sanctioned activities, at a school-sponsored event or on the property of any school, school bus, or school bus stop; however, a person may carry a firearm:
1. In a case to a firearms program, class or function which has been approved in advance by the principal or chief administrative officer of the school as a program or class to which firearms could be carried;
2. In a case to a vocational school having a firearms training range; or
3. In a vehicle pursuant to s. 790.25(5); except that school districts may adopt turitten and published policies that icaive the exception in this subparagraph for purposes of student and campus parking privileges.
(emphasis added). The statute defines “school” as “any preschool, elementary *532 school, middle school, junior high school, secondary school, vocational school, or post-secondary school, whether public or nonpublic.”
Thus, section 790.115(2)(a) makes it a felony to possess a firearm on the grounds of any school, with exceptions. The basis of Ragland’s motion to dismiss was the exception provided in subpart three, which cites section 790.25(5). Section 790.25 concerns the “lawful ownership, possession, and use of firearms and other weapons.” Subsection (1) of the statute provides:
(1) DECLARATION OF POLICY.— The Legislature finds as a matter of public policy and fact that it is necessary to promote firearms safety ánd to curb and prevent the use of firearms and other weapons in crime and by incompetent persons without prohibiting the lawful use in defense of life, home, and property, and the use by United States or state military organizations, and as otherwise now authorized by law, including the right to use and own firearms for target practice and marksmanship on target practice ranges or other lawful places, and lawful hunting and other lawful purposes.
Subsection (4) provides:
(4) CONSTRUCTION. — This act shall be liberally construed to carry out the declaration of policy herein and in favor of the constitutional right to keep and bear arms for lawful purposes. This act is supplemental and additional to existing rights to bear arms now guaranteed by law and decisions of the courts of Florida, and nothing herein shall impair or diminish any of such rights. This act shall supersede any law, ordinance, or regulation in conflict herewith.
Subsection five permits the possession of a securely encased firearm in a vehicle:
(5) POSSESSION IN PRIVATE .CONVEYANCE. — Notwithstanding subsection (2), it is lawful and is not a violation of s. 790.01 [concerning concealed weapons] for a person 18 years of age or older to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without a license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use. Nothing herein contained prohibits the carrying of a legal firearm other than a handgun anywhere in a private conveyance when such firearm is being carried for a lawful use. Nothing herein contained shall be construed to authorize the carrying of a concealed firearm or other weapon on the person. This subsection shall be liberally construed in favor of the lawful use, ownership, and possession of firearms and other weapons, including lawful self-defense as provided in s. 776.012.
In his motion to dismiss, Ragland asserted that the rifle found in his vehicle had been encased securely in a plastic ease with four metal clasps holding it closed. The motion argued that Ragland’s possession of the firearm was legal under section 790.25. Ragland further alleged that BCC had not adopted written and published policies waiving the provision in section 709.115(2)(a)3., which allows the possession of firearms and weapons “[i]n a vehicle pursuant to s. 790.25(5).”
The state filed a traverse, alleging that BCC had indeed adopted written and published policies waiving the exception allowing possession of firearms and weapons pursuant to section 790.25. Attached to the traverse were parts of two BCC publications setting forth school policy with respect to the possession of weapons on school property.
The two provisions are:
*533 3. WEAPONS. Possession, display or use of any firearm or dangerous weapon is against the Code of Conduct and Florida Law. This includes handguns, rifles, shotguns, air/pellet guns, slingshot, dirk, metallic knuckles, billie, tear gas gun, destructive device, fireworks, or any instrument which is used in a dangerous or threatening manner. It should also be noted that it is a Code of Conduct violation to possess, display or use a knife having a blade in excess of three (3) inches in length.
* * *
34. Firearms, Weapons, Fireworks, Explosives. No students, except law enforcement officers, may have weapons in their possession at any time on college property. Weapons are defined as firearms, knives, explosives, inflammable materials, or any other item that may cause bodily injury or damage to property-
The order dismissing the information states that the court accepted in evidence “excerpts from the Student Handbook and from a Campus Rules Pamphlet, both published by BCC.” The order states that the defendant agreed that the documents had been duly published and circulated by BCC to its students. The trial court determined that there were no issues of material fact in dispute, and that the crux of the matter was the legal effect of the language in the publications. The court determined that the language in the documents was insufficient to “revoke and/or to put students on notice, that the general statutory right to possess a securely encased firearm in a private vehicle has been revoked, and it is therefore illegal to do so on campus.”
We agree with the trial court’s analysis.[1] Section 775.021(1) provides, “The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.” The rule of strict construction arises from the due process requirement that criminal statutes must apprise ordinary persons of common intelligence what is prohibited. State v. Cohen, 696 So.2d 435, 440 (Fla. 4th DCA 1997) (citing Perkins v. State, 576 So.2d 1310, 1312-13 (Fla.1991)). The BCC publications do not expressly waive the vehicle exception to the proscription of firearms and other weapons on campuses. Section 790.115 generally proscribes weapons on school grounds, as does the published policy. The statute excepts from its *534 proscription weapons that are in a vehicle and securely encased. The publications do not deviate from the statute in the proscriptions they make. Although the publications do not affirmatively provide for the vehicle exception, they do not give notice of an intent on the part of BCC (if there indeed was one) to swallow the exception. Instead, the publications invoke Florida law, and therefore affirmatively suggest that Florida law has not been waived. We think that the failure to state expressly that BCC waived the exception means that there was no waiver.
AFFIRMED.
SAWAYA, J, concurs in result only without opinion.
HARRIS, J., concurs and concurs specially with opinion.

. Because the parties here assume that section 790.115 delegates to the various school authorities the power and responsibility to render criminal that which is generally lawful, we have no occasion to decide whether that was indeed the intent of the legislature, or whether such a delegation is constitutionally permissible. Compare, B.H. v. State, 645 So.2d 987 (Fla.1994). Nor need we decide whether section 790.115 authorizes the waiver at post-secondary schools. Although the statute defines a '‘school” as "any preschool, elementary school, middle school, junior high school, secondary school, vocational school, or post-secondary school, whether public or nonpublic, ” "school districts” are specific legal entities, and school districts do not operate community colleges. Compare § 228.041(3) ("A school district is a district created and existing pursuant to s. 4, Art. IX of the State Constitution”); Art IX, § 4, Fla. Const. ("Each county shall constitute a school district ...”); § 228.041(l)(b) ("Community colleges shall consist of all educational institutions which are operated by local community college district boards of trustees under specific authority and regulations of the State Board of Education and which offer courses and programs of general and academic education parallel to that of the first and second years of work in institutions in the State University System, of career education, and of adult continuing education”).